```
                                                            USDC SDNY
                                                            DOCUMENT
                                                            ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                               DATE FILED: March 24, 2010
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                :
ROGER ANDREWS,                                  :
                                                :
                        Plaintiff,              :    04 Civ. 566 (PAC) (RLE)
                                                :
            - against -                         :    MEMORANDUM
                                                :    OPINION & ORDER
C.O. CRUZ OF FULTON CORR. FAC.,                 :
C.O. PADILLA OF FULTON CORR. FAC.,              :
C.O. LAVANTE OF FULTON CORR. FAC.,              :
                                                :
                        Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Roger Andrews ("Andrews") brings this action against Defendants Eddie Cruz ("Cruz"), Jose Padilla ("Padilla") and Thomas Lavan[1] ("Lavan") asserting claims under 42 U.S.C. § 1983 for conspiracy to assault, assault, failure to prevent assault and inadequate medical care. Andrews alleges that the Defendants, current and former New York Department of Correctional Services ("DOCS") corrections officers, conspired to, and did, assault him in violation of his constitutional rights when he was incarcerated at the Fulton Correctional Facility ("Fulton") in the Bronx, New York.

Andrews filed his Complaint on January 23, 2003.[2] The Court referred the general pretrial matters and dispositive motions in the case to Magistrate Judge Ronald Ellis on March 30, 2004. On May 4, 2009, all three Defendants filed separate motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. As grounds for the motions, Defendants argue that Andrews failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995

---

[1] In the Complaint, Lavan is mistakenly referred to as "C.O. Lavante."
[2] While initially proceeding pro se, Andrews was appointed counsel.

1

("PLRA"), 42 U.S.C. § 1997e et seq. On March 9, 2010, Magistrate Judge Ellis issued a Report and Recommendation (R&R) recommending that the Court deny the motions for summary judgment. The Court has reviewed the R&R and Cruz's, Lavan's and Padilla's timely objections.[3] For the reasons that follow, the Court adopts Magistrate Judge Ellis' findings and recommendations. The Defendants' motions for summary judgment are denied.

## BACKGROUND

**I. Facts**[4]

In early 2001, Andrews was a participant Fulton's Day Reporting Program (the "Program"). As part of the Program, Andrews lived in a private residence and reported to Fulton on scheduled dates. In February, 2001, Cruz began harassing Andrews based on his race and Andrews complained about the harassment to Cruz's supervisor, Sergeant Holmes ("Holmes"). At Holmes' direction, Andrews filed a written complaint concerning the harassment with Fulton's Deputy Supervisor of Security on April 19, 2001.

On April 21, 2001, Andrews reported to Fulton as scheduled. Cruz had Andrews submit to a drug test which was administered by Padilla. The test came back positive for opiate use and Andrews was ordered to be confined in the Special Housing Unit ("SHU"). Andrews, however, spoke with Holmes and challenged the test results. When Holmes conducted a drug test on Andrews the following day, the results came back negative.

---

[3] Lavan and Padilla have submitted separate Objections. Cruz's Objections incorporate Lavan's arguments by reference.
[4] The facts in this section are taken primarily from the R&R. In the R&R, Magistrate Judge Ellis set forth the facts as alleged in the Complaint and in Andrews' Statement of Facts. The facts relevant to the issue of exhaustion are generally agreed upon.

As Cruz and Padilla were escorting Andrews to the SHU, Cruz allegedly punched Andrews in the face and said "[d]o you think I don't know about you complaining to my superior officers about me you bitch ass nigger." (Compl. ¶ 31.) Andrews, Cruz and Padilla were met at the SHU by Lavan. As Andrews was led towards a cell, one of the Defendants allegedly punched him in his face from behind and he fell to the ground. Once he was on the ground, the Defendants proceeded to kick and punch Andrews in his head, back, ribs and groin. After the beating, Andrews was taken to a cell in the SHU where Cruz told him, "you can either hold down that beating or take a charge of assault on an officer. If I hear anything about this from anyone they'll find you hanging in an empty cell." (Id. ¶ 37.)

The morning after the attack, a corrections officer noticed Andrew's injuries and permitted him to remain in bed. In light of Cruz's threat, Andrews was too afraid to ask the officer for medical assistance. When his pain did not subside, however, Andrews requested medical assistance from a female officer. Andrews told the officer about the assault, but asked her not to tell anyone. The officer nevertheless told prison officials about the assault and Andrews was taken to the Fulton nurse and then to an outside hospital for treatment. The female officer asked Andrews to file a formal grievance, and when Andrews returned from the hospital, he filed a formal grievance concerning the assault and requested that he be transferred to another facility. (Grievance, Declaration of Meredith Shaw ("Shaw Decl."), Ex. I.)

Andrew's grievance was forwarded to Fulton's acting Superintendent, Terrance McElroy ("McElroy"). McElroy interviewed Andrews and conducted a walk-through of the area where the alleged assault took place. After the interview, McElroy apologized to

Andrews and told him that his request for a transfer would be honored. At some point, Lieutenant Lawson ("Lawson") conducted an internal investigation into the alleged assault. Following Lawson's investigation, McElroy wrote a letter to the Deputy Inspector General of DOCS requesting an investigation and stating, "I do not concur with the investigation conducted, and feel, based on further investigation that there is something to this complaint. I'm requesting immediate transfer to another facility for the safety of the inmate who has expressed fear of retaliation from staff." (Letter from McElroy to Deputy Inspector General dated April 27, 2001, Shaw Decl., Ex. J.)

Days after Andrews filed his grievance, he was transferred to Sing Sing Correctional Facility ("Sing Sing"). Shortly after arriving at Sing Sing, David Holland ("Holland"), an investigator with DOCS Inspector General's Office, interviewed Andrews. Holland told Andrews not to speak about the assault since Cruz had connections at Sing Sing.

In 2002, Padilla left DOCS, and Cruz was terminated in 2003. Andrews believes that the two officers left DOCS because of the investigation into his assault. Ultimately, Andrews never received a written decision on his grievance from McElroy or anyone else.

**II. The PLRA and Magistrate Judge Ellis' R&R**

The PLRA states that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,

4

and whether they allege excessive force or some other wrong." Porter v. Nussle, 634 U.S. 516, 532 (2002). To properly exhaust administrative remedies, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Block, 549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

"[W]hile the PLRA's exhaustion requirement is 'mandatory,' certain exceptions apply." Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004) (internal citation omitted). A three-part inquiry applies when "a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies . . . ." Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Courts ask first "whether administrative remedies were in fact 'available' to the prisoner." Id. Next, courts consider whether the affirmative defense of non-exhaustion has been forfeited "or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id. Finally, if the Court determines that administrative remedies were available to the plaintiff, and that the defendants are not estopped from raising the non-exhaustion defense, the Court must consider "whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with the administrative procedural requirements." Id. (quoting Giano, 380 F.3d at 676).

Magistrate Judge Ellis conducted this three-part inquiry. He determined that Andrews had exhausted his available administrative remedies. (R&R at 7-14.) Magistrate Judge Ellis explained that Andrews filed his grievance under the DOCS

5

expedited procedure for inmates alleging harassment.[5] "Harassment" is defined as "employee misconduct meant to annoy, intimidate, or harm an inmate." Espinal, 558 F.3d at 135 (quoting N.Y. Comp. Codes. R. & Regs., tit. 7, § 701.11(a)); see (DOCS Directive No. 4040 dated June 8, 1998 ("Directive No. 4040") § II(E), Shaw Decl., Ex. N.). The expedited procedure is available to inmates claiming excessive force, which is a form of "harassment." Hemphill, 380 F.3d at 686-87.

Under the expedited procedure, a prisoner is required to report harassment to the supervisor of the harassing DOCS employee. N.Y. Comp. Codes. R. & Regs., tit. 7, § 701.11; (Directive No. 4040 § VIII). The harassment grievance is then sent directly to the superintendent of the facility who determines "whether the grievance, if true, would represent a bone fide case of harassment." Id. If such a determination is made, the superintendent must (1) "initiate an in house investigation by higher ranking supervisory personnel into the allegations contained in the grievance," (2) "request an investigation by the Inspector General's Office," or (3) request an investigation by the New York State Police. Id.

Within twelve working days of receiving the grievance, the superintendent "will render a decision on the grievance and transmit it, with reasons stated, to the inmate, grievance clerk, and any direct party of interest." Id. If the superintendent fails to respond within twelve working days, the prisoner may appeal the grievance to the Central Office Review Committee ("CORC"). Id. If the prisoner is dissatisfied with the superintendent's response, he may appeal to the CORC within four working days of

---

[5] In analyzing whether Andrews exhausted his available administrative remedies, Magistrate Judge Ellis was correct in looking to the grievance procedures in place at the time of Andrews' alleged assault. See Espinal v. Goord, 558 F.3d 119, 125 (2d Cir. 2009). While the DOCS regulations in effect in 2001when the alleged assault occurred have since been repealed and new regulations adopted, "there are only 'minor differences' between the former and the current regulation." Id. Unless noted, citations in this opinion are to the regulations and directives which applied in 2001.

6

receiving the response.  Id. Appeals are lodged by filing a notice of appeal with the inmate grievance clerk.  Id.

Magistrate Judge Ellis found that Andrews had exhausted his grievance "to its logical conclusion."  (R&R at 9.)  The Defendants argued that since Acting Superintendent McElroy never issued a written decision, Andrews failed to exhaust his available appeal to the CORC.  Magistrate Judge Ellis held, however, that Andrews was aware that McElroy had found Lieutenant Lawson's investigation unsatisfactory and concluded that "there is something to this complaint."   Since McElroy had referred Andrews' complaint to the Inspector General, Andrews had no reason to appeal the favorable resolution of his grievance to the CORC.  Magistrate Judge Ellis noted that McElroy told Andrews that his request for a transfer in the grievance would be granted and he was then transferred to Sing Sing.  (R&R at 10.)  Ultimately, Magistrate Judge Ellis concluded that "[t]o force Andrews to file a grievance to CORC, after the investigation by the Inspector General's Office, would have forced Andrews to grieve something that had seemingly been remedied by the Inspector General's Office."  (Id.)

Magistrate Judge Ellis also found that even if Andrews had wanted to appeal McElroy's failure to issue him a written decision, he could not have.  (R&R at 13-14.)  At the time Andrews filed his grievance, N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(k) and Directive No. 4040 § IV(H)(1) provided that "[a]n inmate transferred to another facility may continue an appeal of a departmental grievance."  A "departmental grievance" is one which "which affects an inmate during his/her confinement at various facilities throughout the department." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.2; (Directive No. 4040 § II(B)).  An "institutional grievance," on the other hand, is a

7

grievance "in which the grievant is only affected as long as he/she remains a resident of the facility in which the grievance is filed." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.2; (Directive No. 4040 II(C)). Since Andrews' grievance was clearly institutional, Magistrate Judge Ellis found that once Andrews was transferred to Sing Sing his grievance was no longer appealable and as such Andrews was without any further "available" administrative remedies. (R&R at 14.)

Next, Magistrate Judge Ellis rejected Andrew's contention that the Defendants are estopped from raising the non-exhaustion defense because of Cruz's threat on his life. (R&R at 14-15.) Magistrate Judge Ellis explained that Cruz's threat was not sufficient to estop the Defendants in light of the fact Andrew's had utilized the grievance procedure despite the threat. (Id. at 15.)

Finally, Magistrate Judge Ellis concluded that while Andrews had exhausted his administrative remedies, any possible failure to exhaust was justified. (Id. at 15-18.) He explained that Andrews believed he had received a favorable resolution of his grievance because of the investigation by the Inspector General's office. According to Magistrate Judge Ellis, even if McElroy's failure to issue a written decision technically entitled Andrews to appeal, Andrew's belief that he need not appeal was a reasonable interpretation of Directive No. 4040 and N.Y. Comp. Codes R. & Regs. tit. 7, § 701.11. Magistrate Judge Ellis reasoned that since McElroy communicated his decision to Andrews by telling him he would be transferred, "it is apparent how an inmate could interpret the superintendent's action to mean that he had both rendered a decision and transmitted it." (R&R at 17.)

**DISCUSSION**

**III. Standard of Review**

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the recommendations of the magistrate judge, the Court is obligated to review the contested issues de novo. See Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998). The Court, however, "may adopt those portions of the Report [and Recommendation] to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000).

**IV. Objections**

**A. Allegations against Lavan**

According to Lavan, Andrews' grievance does not allege that he violated Andrews' civil rights or subjected him to excessive force. (Lavan Objection at 5-6.) Lavan argues that Andrews, therefore, did not exhaust his administrative remedies as to him.

While Andrews' grievance states that he is unsure whether Lavan actually hit him, it also states that when Andrews reached the SHU with Cruz and Padilla, Lavan said "welcome to my home said the spider to the fly." (Grievance at 1.) Further, Lavan was present during the beating and afterwards told Andrews "to hold . . . [his] eye." (Id.) Thus, despite Lavan's protestations, Andrews indeed alleged that Lavan violated his civil rights. See, e.g., Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (explaining that

§ 1983 conspiracy claim "may have to be proven by circumstantial, rather than direct, evidence.").

In any event, Andrews was not required to name Lavan in his grievance in order to exhaust his claims against Lavan. "[I]t is plain that a New York state prisoner is not required to name responsible parties in a grievance in order to exhaust administrative remedies." Espinal, 558 F.3d at 126. Nor is a prisoner required to "articulate legal theories." Id. at 127-28. Indeed, all Andrews had to provide in his grievance was "a specific description of the problem." Id. at 127. The "problem," as Andrews explained it in his grievance, was that he was savagely beaten by corrections officers. This was all he was required to set forth in his grievance to exhaust his claims against Lavan.

## B. Exhaustion of Available Procedures

All three Defendants argue that Magistrate Judge Ellis erred in concluding that Andrews had exhausted his available remedies after submitting his grievance and receiving a favorable response (i.e., a transfer and commencement of an Inspector General investigation) from McElroy. (Lavan Objections at 5; Padilla Objections at 1-2.) According to the Defendants, because McElroy failed to issue a written decision, Andrews was required to appeal to the CORC in order to exhaust. Since he did not, Andrews failed to "complete the administrative review process in accordance with the applicable procedural rules." Woodford, 548 U.S. at 88.

As Defendants would have it, despite receiving the transfer he requested in his grievance, and despite learning that the Investigator General's Office was investigating his grievance, Andrews was required to be a sore winner and to appeal because he never received a writing from McElroy regarding what he knew to be true about the outcome of

10

his grievance.  Confronting the same situation, Judge Patterson recently concluded that "[s]ince an investigation was the only relied relief available under . . . 7 N.Y.C.R.R. § 701.11(b)(4), Plaintiff had no reason to believe he needed to appeal the superintendent's failure to respond to the CORC."  Lawyer v. Gatto, No. 03 Civ. 7577(RPP), 2007 WL 549440, at * 8 (S.D.N.Y. Feb. 21, 2007).  And the Second Circuit has held that once favorable relief is obtained on a grievance, there is "no further possibility of some relief for [the prisoner]," Abney v. McGinnis, 380 F.3d 663, 229 (2d Cir. 2004), and exhaustion has occurred.

But even if Andrews was technically required to appeal, he could not have because he was transferred to Sing Sing.  Defendants argue that nothing in Directive No. 4040 or N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(k) says that "institutional grievances" cannot be appealed after the grievant is transferred.  (Lavan Objections at 6; Padilla Objections at 2.)  Defendants are wrong.  Directive No. 4440 and § 701.3(k) both expressly provide for appeals of "departmental grievances."  By negative implication, "institutional grievances" are not appealable after the grievant is transferred.  Discussing § 701.3(k), Judge Lynch recently held that "[t]his provision, which specifically addresses appeals of grievances by inmates who have been transferred out of the institution in which the grievance was filed, precluded inmates from appealing 'institutional' grievances affecting the grievant alone to the superintendent or beyond after transfer to another facility – the very circumstances facing plaintiff here."  Land v. Kaufman, No. 07 Civ. 8070(GEL), 2009 WL 1106780, at *3 (S.D.N.Y. Apr.23, 2009).[6]  Since Andrews

---

[6] Judge Lynch also pointed out that "[t]he corresponding provision in the current regulations, in sharp contrast, provides, in relevant part: 'An inmate transferred to another facility may continue an appeal of any grievance,' and provides specific instructions on how to do so."  Land, 2009 WL 1106780, at *3 n.5 (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(h)(2) (2009)).

11

could not appeal his grievance once he was transferred from Fulton to Sing Sing, he exhausted all "available" administrative remedies and properly commenced this action. See 42 U.S.C. § 1997e(a).

**C. Special Circumstances**

The Defendants also object to Magistrate Judge Ellis' conclusion that even if Andrews did not exhaust his administrative remedies, his failure is excused because he reasonably interpreted Directive No. 4040 and N.Y. Comp. Codes. R. & Regs., tit. 7, § 701.11.  (Lavan Objections at 7-8; Padilla Objections at 4.)  There are "special circumstances," however, which excuse a prisoner's failure to exhaust, including "his reasonable interpretation of DOCS regulations." Hemphill, 380 F3d at 689.  Considering § 701.11, this Court has noted:

> DOCS procedures as to an administrative appeal are unclear to this Court where, as here, the Superintendent has directed that the complaint be investigated by the Inspectors General's Office. . . . At that stage, the inmate has at least partial favorable relief, and as the Second Circuit has held, where the inmate receives favorable relief there is no basis for administrative appeal.

Lawyer, 2007 WL 549440, at *8 (quoting Harriston v. LaMarch, No. 05 Civ. 6642(KMW)(AJP), 2006 WL 2309592, at *9 (S.D.N.Y. Aug. 10, 2006) (citing Abney, 380 F.3d at 669)).  In light of this uncertainly, the Court agrees with Magistrate Judge Ellis that it was reasonable for Andrews interpret Directive No. 4040 and § 701.11 not to require an appeal to the CORC, simply because McElroy did not respond in writing to his grievance.  An investigation was commenced into Andrew's grievance and he received the transfer he requested.  In these circumstances Andrews could reasonably conclude that he was not required to appeal what was, for all practical purposes, a favorable resolution of his grievance.

## CONCLUSION

For the foregoing reasons, the Court accepts and adopts the Report and Recommendation as its opinion. The Defendants' motions for summary judgment are DENIED. The Clerk is directed to close the motions at docket numbers 65, 66 and 67.

Dated: New York, New York
      March 24, 2010

SO ORDERED

PAUL A. CROTTY
United States District Judge